Parmelee v. Price.

105    271<br>
a208s  544

## Harmon L. Parmelee et al. v. Vincent C. Price et al.

1.    STATUTE OF LIMITATIONS—*Equity Follows the Law.*—Where a bill in equity states a case within the statute of limitations at law, the objection may be raised by demurrer to the bill.    In such cases equity follows the law by analogy.

2.    SAME—*A Statute of Repose.*—The statute of limitation is a statute of repose.    It is intended for the protection of the alleged debtor, against demands brought forward after so long a time from the transaction involved, that evidence formerly within the power of the defendant to produce may have been lost, destroyed, or otherwise placed beyond his power or control.

3.    SAME—*Where a Person Liable to an Action Fraudulently Conceals the Cause of Such Action from the Knowledge of the Person Entitled Thereto.*—If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the

action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterward.

4. STATUTES—*Who May File Bill under Section 25 of the Corporation Act.*—Section 25 of the corporation act provides a remedy in the nature of a creditor's bill, and is designed to aid creditors in the collection of their debts. It is not restricted to judgment creditors.

5. SAME—*Liability of Stockholders under Section 25 of the Corporation Act.*—Section 25 of the corporation act clearly authorizes the bringing of a suit in equity against a corporation and its stockholders jointly, upon the corporation ceasing to do business, leaving debts unpaid. It clearly contemplates liability of the stockholders, for the purpose of bringing suit against them, immediately on the company ceasing to do business, leaving debts unpaid.

6. SAME—*Application of Term, " After Exhausting the Assets of the Corporation" in Section 25 of the Corporation Act.*—The exhaustion of the assets of the corporation is not a condition precedent to the bringing of a suit against the corporation and its stockholders jointly, because section 25 expressly authorizes such suit, and the exhaustion of the assets of the corporation is not made a condition precedent thereto. A stockholder is entitled to have the corporate assets, in possession of the corporation, applied to the payment of the corporation debts, before, in a suit against him and the corporation jointly, he can be decreed to pay anything. The meaning of the language is that in such a suit it must be ascertained, in the first instance, how far the corporate assets. if any, will go toward paying the claims of the complainant or complainants, which may be done by ordering a sale of such assets, when, if the proceeds of the sale are not sufficient to pay the claims, the defendant stockholders may be decreed to pay the deficit.

7. PRACTICE—*When the Statute of Limitation Begins to Run, Where Two Remedies for the Same Relief Accrue at Different Times.*—When there are two remedies, pursuing either of which a party may have the same relief, and the rights to the two remedies accrue at different times, the statute begins to run from the time when the right to pursue the earlier remedy accrues.

Creditor's Bill.—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed December 22, 1902.

Statement.—This is an appeal from a decree sustaining a demurrer to a bill and dismissing the bill. The bill is a creditor's bill, and was filed by appellants, May 25, 1901, and was amended December 11, 1901; the demurrer sustained by the court is to the amended bill. The defendants to the bill are the Interior Building Company, a corporation, and

Parmelee v. Price.

Vincent C. Price and Henry F. Vehmeyer, stockholders in said defendant company. Henry F. Vehmeyer demurred, generally, to the bill; Vincent C. Price demurred, assigning as cause for his demurrer, first, that it appears from the bill that the cause of action, if any, accrued prior to May 23, 1895, and is barred by section 15, chapter 83 of the statute of limitations; second, laches, etc. The bill sets up judgments recovered in the Circuit and Superior Courts of Cook County, as shown by the following table:

| Name. | Term. | Court. | Date. | Amount. |
|---|---|---|---|---|
| Parmalee & Stoneman....Dec. 1896 | | Circuit | Jan. 7, 1897..$ | 908 52 |
| The Columbia Hardwood Lumber Company.....Nov. 1896 | | Superior | Nov. 11, 1896.. | 1,075 76 |
| S. K. Martin Lumber Company...................Mar. 1897 | | Circuit | Apr. 12. 1897.. | 1,901 90 |
| Tyler & Hippach.........Dec. 1896 | | Circuit | Jan. 7, 1897.. | 348 83 |
| Lesh, Sanders and Egbert Company...............Feb. 1897 | | Circuit | Feb. 24, 1897.. | 2,280 02 |
| The Martin-Barriss Company....................Feb. 1896 | | Circuit | Mar. 9, 1896.., | 464 50 |
| Penrod & Wood..........Feb. 1897 | | Circuit | Feb. 24, 1897.. | 1,378 30 |

And avers that the same remain in full force and wholly unsatisfied; also that executions were issued on the judgments and were delivered to the sheriff, and by him returned, as shown by the following table:

| Judgment of. | Date of issue. | Date of indorsement and delivery to sheriff. | Date of return. | Date of filing. |
|---|---|---|---|---|
| Parmalee & Stoneman...........May | 4, 1901 | May 24, 1901 | May 24, 1901 | May 24, 1901 |
| The Columbia Hardwood Lumber Co....May | 6, 1901 | May 24, 1901 | May 24, 1901 | May 24, 1901 |
| S. K. Martin Lumber Co.........Apr. | 14, 1897 | Apr. 15, 1897 | July 13. 1897 | July 15, 1897 |
| 35 Tyler & Hippach...........Jan. | 9, 1897 | Jan. 20, 1897 | Apr. 9, 1897 | Apr. 30, 1897 |
| Lesh, Sanders and Egbert Co......Mar. | 1, 1897 | Mar. 2, 1897 | May 30, 1897 | June 1, 1897 |
| The Martin - Barriss Company..June | 5; 1901 | June 5, 1901 | June 6. 1901 | June 7, 1901 |
| Penrod & Wood.Mar. | 1, 1897 | Mar. 2, 1897 | May 30, 1897 | June 1, 1897 |

Also, that alias writs of execution were sued out by some of the complainants, delivered to the sheriff and by him returned, as shown by the following table:

| Judgment of. | Date of issue. | Date of indorsement and delivery to sheriff. | Date of return. | Date of filing. |
|---|---|---|---|---|
| S. K. Martin Lumber Co. | May 10, 1901 | May 24, 1901 | May 24, 1901 | May 24, 1901 |
| Tyler & Hippach. | May 13, 1901 | May 24, 1901 | May 24, 1901 | May 24, 1901 |
| Lesh, Sanders and Egbert Co. | May 10, 1901 | May 24, 1901 | May 24, 1901 | May 24, 1901 |
| Penrod & Wood. | May 10, 1901 | May 24, 1901 | May 24, 1901 | May 24, 1901 |

That the return of each of said executions issued on the judgments of the S. K. Martin Lumber Co., Tyler & Hippach, Lesh, Sanders and Egbert Co., and Penrod & Wood, appellants, was as follows:

"The within named defendant not found and no property of the within named defendant found in my county on which to levy this writ. I therefore return the same, no property found and no part satisfied this......day of...... 1897;"

and the return of the execution issued on the judgment of the Columbia Hardwood Lumber Co. and on the alias executions issued on the judgments of S. K. Martin Lumber Co., Tyler & Hippach, Lesh, Sanders and Egbert Co., and Penrod & Wood, were as follows:

" I have demanded of the within named defendant Interior Building Company, a corporation, by its president, Vincent C. Price, the 24th day of May, 1901, money or property to satisfy this writ, and it having failed to satisfy the same or any part thereof, and not being able to find any property of the within named defendant in my county on which to levy this writ, I therefore return the same, no property found and no part satisfied, this 24th day of May, 1901.

ERNEST J. MAGERSTADT, Sheriff,
By SAMUEL E. ERICKSON, Deputy;"

and the return of the execution issued on the judgment of the Martin-Barriss Co. was as follows:

" I have demanded of the within named defendant, Interior Building Company, a corporation, by its president, Vincent C. Price, the 6th day of June, 1901, money or property to satisfy this writ, and it having failed to satisfy the same or any part thereof, and not being able to find any property of the within named defendant in my county on which to levy this writ, I therefore return the same, no

property found and no part satisfied, this 6th day of June, 1901.    ERNEST J. MAGERSTADT, Sheriff,

By SAMUEL E. ERICKSON, Deputy; "

that the suits in which said judgments were recovered were commenced between and including May 16th and 25th, 1895, and were prosecuted with due diligence, etc.; that May 16, 1895, a judgment by confession was rendered in the Circuit Court of Cook County in favor of the Lincoln National Bank of Chicago and against said Interior Building Co. for the sum of $20,065 and costs, on which judgment an execution was issued and levied on all the tangible property and effects of said company.   It is then averred as follows :

" That on the 16th, 17th, 18th and 23d days of May, 1895, numerous assumpsit and attachment suits were commenced against said company and levies made on its property and effects; that on May 17, 1895, two bills were filed against said company by certain of its creditors, in the Circuit Court of said county, being general numbers 142,991 and 142,992 of said court, to which then or subsequently all its stockholders and stock subscribers were made parties defendant; which causes were afterward consolidated, and on May 20, 1895, a receiver was appointed of the property, things in action and effects of said company, and all its property, things in action and effects were afterward collected by him and applied, under the direction of said court by the final decree entered in said consolidated causes, by consent of all the parties thereto, on October 31, 1899, after the payment of the expenses of said receivership, to the payment *pro tanto* of the judgment of said bank; but that no decree was ever entered in said consolidated causes dissolving said Interior Building Company and winding up its affairs, or finding any of the parties thereto liable on account of their subscriptions to the capital stock of said company; but, on the contrary, with respect to the allegations in the amended bill of complaint in said consolidated causes, of such liability, and generally, said bill was dismissed, by agreement of all the parties thereto, by said consent decree, and a reference to a master in chancery of said court of the issues raised on such allegations and the other issues in said consolidated causes, aside from questions arising with respect to the administration of the estate of said company by said receiver, by like agreement of the parties thereto,

was, by said consent decree, set aside; and your orators
further represent that they were not parties to said con-
solidated causes, nor in any manner bound or precluded by
any of the proceedings therein;"

that the Martin-Barriss Co. had no knowledge of said last
mentioned bills or the proceedings therein until May, 1901;
that on October 31, 1899, the Interior Building Company
was, and has since remained, hopelessly and irretrievably
insolvent.    The bill then sets out the articles of incorpora-
tion of the defendant company, which show that a certifi-
cate of complete organization of said company was issued
June 2, 1890; that the object of its incorporation was "for
manufacturing the interior woodwork for private and pub-
lic buildings, and all woodwork pertaining to the same;"
that its capital stock was $125,000, divided into 1,250 shares
of $100 each, and the location of its principal office the
city of Chicago, and that its stock was subscribed for as
follows:

| " Names. | Shares. | Amount. |
|---|---|---|
| Vincent C. Price, | 480 | 48,000 |
| Henry F. Vehmeyer, | 320 | 32,000 |
| C. Augustus Ebert, | 300 | 30,000 |
| R. C. Price, | 100 | 10,000 |
| G. K. Williams, | 50 | 5,000." |

It is averred, in substance, that in April, 1890, one James
B. Goodman, the assignee of an insolvent estate then pend-
ing in the County Court of Cook County, owned and pos-
sessed certain buildings, machinery, equipments, etc., and
had, for many months, been endeavoring to sell and dispose
of the same, under the orders of said court, and that the
above mentioned subscribers for stock formed the design of
buying and operating said "plant," and, for the purpose of
avoiding liability as partners, to form a corporation, with a
capital of $125,000, regardless of the actual amount paid on
the subscriptions for stock; and designed to expend in the
formation of said corporation only the amount actually
necessary to purchase said plant and begin operations; that
at or about the time of forming said corporation, and in
pursuance of said design, said plant was purchased from

Parmelee v. Price.

said Goodman for the sum of $25,000, which sum was furnished by said stock subscribers in the proportion of their said subscriptions, and was turned over to the Interior Building Co., and the further sum of $25,000 was paid by said subscribers to said company, in the proportion of their said subscriptions, and the entire capital stock of said company was issued to said subscribers, in the amounts subscribed for by them, as fully paid stock, and that no money or thing of value, in addition to the said plant purchased for $25,000, and $25,000 in cash, was ever paid on account of said subscriptions of $125,000; that, by reason of the premises, Price and Vehmeyer have paid only two-fifths of the amounts of their subscriptions, and are liable· for the debts of the defendant company, and for the amounts due on said judgments, to the extent of the amounts unpaid on their subscriptions, etc.   The bill prays an accounting and that defendants be decreed to pay, etc., and for general relief.

Corbin & Zillman, attorney for appellants.

James Frake, attorney for appellee Henry F. Vehmeyer.

Flower, Vroman & Musgrave, attorneys for appellee V. C. Price.

Mr. Justice Adams delivered the opinion of the court.

The only questions argued by counsel are whether section 15 of chapter 83 of the statute which limits actions therein mentioned to five years, applies, and whether the complainants are guilty of laches.   The contention of appellee is that, it appearing by the bill that May 20, 1895, a receiver of all the assets and effects of the Interior Building Co. was appointed on bills filed by creditors of the company, and that the said assets and effects were, by the receiver and under the final decree of the court, entered October 31 1899, applied to the judgment of the Lincoln National Bank of Chicago, after payment of the expenses of the receivership, etc., and all the assets of the company having been in the possession of the receiver from the time of his

appointment, May 20, 1895, until the final decree, October 31, 1899, or more than four years, it sufficiently appears that the defendant company had ceased doing business, leaving debts unpaid, and that, when the company ceased doing business, leaving debts unpaid, namely, May 20, 1895, appellants' right of action accrued under section 25 of the corporation act, and, consequently, their bill filed May 25, 1901, was too late; that appellants having failed to file a bill in apt time, under said section 25, can not sustain their bill, as a creditor's bill, under section 49 of the chancery act. If the bill states a case within the statute of limitations, at law, the objection may be raised by demurrer to the bill (Story's Eq. Pl., 9th Ed., Sec. 484), and in such case equity follows the law, by analogy. Ib.; Angell on Limitations, Sec. 25 *et sequens;* School Directors v. School Directors, 105 Ill. 653.

It is contended by counsel for appellants that only judgment creditors can maintain a bill under section 25.

In Butler Paper Co. v. Robbins et al., 151 Ill. 588, the Butler Paper Company filed a bill under section 25 of the corporation act. The company was a simple contract creditor and it was contended by counsel for one of the defendants that the company, being a simple contract creditor, could not maintain the bill. Green's Brief for Tenney, Ib. 593. In respect to this objection the court say:

"It is insisted that there was a want of jurisdiction in the Circuit Court to entertain the complainant's bill. We think this objection is not well taken. The printing company was incorporated under the general act of April 18, 1872, and had ceased doing business, leaving debts unpaid, and complainant was one of its creditors and stockholders, and, under section 25 of said act, had the right, we think, to file this bill. In Hunt v. LeGrand Roller Skating Rink Co., 143 Ill. 118, the court said: 'It is provided in said section that suits in equity may be brought against a corporation and its stockholders, and all persons liable in any way for the debts of said corporation, but it is not stated, in express terms, by whom such suits in equity may be prosecuted. It is manifest, however, that the statute provides a remedy in the nature of a creditor's bill, and is designed to aid credit-

ors in the collection of their debts.' "     See, also, Cohn v. F. S. Waters & Co., 83 Ill. App. 387.

It follows, therefore, that appellants might, under section 25 of the corporation act, have filed a bill about May 20, 1895, when the defendant company ceased doing business, leaving debts unpaid, although their respective claims had not then been reduced to judgments, and on such bill they would have had a remedy against all the stockholders, including those made defendants to the present bill.     Appellants' counsel contends that the liability of the stockholders did not accrue at the time the company ceased doing business, leaving debts unpaid.     We think the question solved by section 25, which provides :

" If any corporation or its authorized agents shall do, or refrain from doing, any act which shall subject it to a forfeiture of its charter or corporate powers, or shall allow any execution or decree of any court of record for a payment of money, after demand made by the officer, to be returned ' no property found,' or to remain unsatisfied for not less than ten days after such demand, or shall dissolve or cease doing business, leaving debts unpaid, suits in equity may be brought against all persons who were stockholders at the time, or liable in any way, for the debts of the corporation, by joining the corporation in such suit; and each stockholder may be required to pay his own *pro rata* share of such debts or liabilities, to the extent of the unpaid portion of his stock, after exhausting the assets of the corporation," etc.

The section clearly authorizes the bringing suits in equity against a corporation and its stockholders jointly, upon the corporation ceasing to do business, leaving debts unpaid. It clearly contemplates liability of the stockholders, for the purpose of bringing suit against them, immediately on the company ceasing to do business, leaving debts unpaid.     Appellant's counsel, relying, apparently, on the words "after exhausting the assets of the corporation," contends that the exhausting of such assets is a condition precedent to the liability of the stockholders.     It is clear, however, that the exhaustion of the assets of the corporation is not a condition precedent to the bringing suit against the corporation

and its stockholders jointly, because section 25 expressly authorizes such suit, and the exhaustion of the assets of the corporation is not made a condition precedent thereto. A stockholder is entitled to have the corporate assets, in possession of the corporation, applied to the payment of the corporate debts, before, in a suit against him and the corporation jointly, he can be decreed to pay anything, and the meaning of the language is that in such a suit it must be ascertained, in the first instance, how far the corporate assets, if any, will go toward paying the claims of the complainant or complainants; which may be done by ordering a sale of such assets, when, if the proceeds of the sale are not sufficient to pay the claims, the defendant stockholders may be decreed to pay the deficit, to the extent of their legal liability; and so the court, in Chicago Steel Works v. Ill. Steel Co., 153 Ill. 9, 15, cited by counsel, say :

" The collection and disposition of these assets, through the medium of a receivership, must necessarily precede the final determination of the liability of the stockholders."

This is a mere marshaling of assets.

In the present case it affirmatively appears by the bill that the Interior Building Co., after May 20, 1895, had not sufficient assets to pay the claim of the Lincoln National Bank; that its assets were exhausted. The averment is, in substance, that the company's assets, after payment of the expenses of the receivership, were applied to the payment *pro tanto*, of the judgment of said bank. But appellants' counsel contend that the bill is distinctly a creditor's bill under section 49 of the chancery act, and that appellants' right to file a bill did not accrue until after executions issued on their judgments had been returned unsatisfied; citing cases. But it seems to be the law that when there are two remedies, pursuing either of which a party may have the same relief, and the rights to the two remedies accrue at different times, the statute begins to run from the time when the right to pursue the earlier remedy accrues. Conklin v. Furman et al., 8 Abbott's Pr. Rep. N. S. 161, was an action against Furman and others, as stockholders

Parmelee v. Price.

of the Newton & Hempstead Plank Road Co., commenced June 24, 1862. The statute limiting the action to six years was pleaded. The indebtedness in question in the case accrued due January 1, 1855, and a suit was commenced against the company and Furman and others, stockholders, June 1, 1855, but was dismissed as to the stockholders, and judgment was recovered against the company August 9, 1860. The statute of New York authorized a separate suit against stockholders for the debts of the corporation, but provided that such suit should not be brought until after judgment on the demand against the corporation, and so the separate action was not barred, if it was the only remedy. But, by another statute, suit might be brought against the corporation and any one or more of its stockholders, as soon as the indebtedness of the corporation accrued due, and the court held that the statute commenced to run when the debt sued for fell due, viz., January 1, 1855, and that as suit was not brought till June 24, 1862, it was barred by the statute. The judgment was affirmed on appeal. Conklin v. Furman, 48 N. Y. 527.

A similar decision was rendered in Cottrell v. Manlove, 58 Kansas, 405.

As far as creditors of a corporation are concerned, the object of section 25 of the corporation act and section 49 of the chancery act, is the same, namely, to aid creditors in the collection of their debts. Butler Paper Co. v. Robbins et al., 151 Ill. 621, and cases cited.

The statute of limitation is a statute of repose. It is intended for the protection of the alleged debtor, against demands brought forward after so long a time from the transaction involved, that evidence formerly within the power of the defendant to produce may have been lost, destroyed or otherwise placed beyond his power or control; and it seems reasonable that the statute should commence to run from the time when the plaintiff had a remedy, pursuing which he could have had all the relief which he was entitled to. The bill alleges that May 20, 1895, a receiver " of the property, things in action and effects of the com-

pany " was appointed, on the former bills against the Interior Building Co. and its stockholders, etc., and, as against the pleader, it must be presumed that the receiver, as soon as practicable, took possession of such property, things in action and effects; and it is apparent that, after the appointment of the receiver, the Interior Building Co., having no property or effects which it could use in carry-ing on its business, must have ceased to do business; and that it left debts unpaid is sufficiently manifest from the bill. The complainants not having filed their original bill until May 25, 1901, six years after the time when they might have proceeded under section 25 of the corporation act, and have obtained, if entitled thereto, the same relief which they now seek, we must hold that their bill is barred by the statute.

The appellant, the Martin Barris Co., was made a party complainant June 10, 1901, and it is averred in the bill that that company had no knowledge of the former bills, or the proceedings thereunder, until May, 1901. This is no answer to the defense of the statute of limitations. Section 22 of the statute provides :

" If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterward."

This is the only provision in the statute excusing strict compliance with its terms, on account of want of knowledge, and impliedly excludes want of knowledge arising from any other cause than the fraudulent concealment mentioned, as an excuse for not bringing suit within the time limited by the statute. See, also, Connor v. Goodman, 104 Ill. 366.

The decree will be affirmed.