### John C. Trainor, Appellant, v. Charles L. Koskey, Appellee.

### Gen. No. 31,093.

1. LIMITATIONS OF ACTIONS—*when cause of action for instalment of rent accrues.* Cause of action based on a lease giving lessor right to judgment on default of any one month's rent due on the first day of the month accrues on the second day of such month at latest and the 10-Year Statute of Limitations starts running from that date.

2. LIMITATIONS OF ACTIONS—*what act governs in action for rent.* Action on a written lease providing for judgment in default of one

month's rent is an action on a written contract barred in ten years from such nonpayment of rent.

- 3. LIMITATIONS OF ACTIONS—*when action for rent barred.* Action for all unpaid rent, not begun until more than ten years after the last date for payment, under lease providing for judgment by confession on nonpayment of any instalment of rent, due on the first day of every month, is barred though begun three days before ten years after the final termination of the lease.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1926. Affirmed. Opinion filed December 29, 1926.

JOHN C. TRAINOR, JR., for appellant.

WILLIAM J. DILLON, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

On April 28, 1922, the plaintiff, John C. Trainor, a lessor, caused to be entered in the circuit court, upon a warrant of attorney in a lease, a judgment by confession in the sum of $3,154.14, against the defendant, Charles L. Koskey, a lessee.

On November 17, 1923, pursuant to an agreement of the parties, the judgment was opened and leave given the defendant to plead.

On November 21, 1923, the defendant filed a plea of the general issue, and, a special plea, alleging (1) that it had been agreed between the plaintiff and the defendant that the latter was released from all liability under the lease; (2) that he had paid all that was due on the lease as long as he had remained in the premises; (3) that it was agreed between them that the defendant should vacate the premises and be released from further obligations to pay rent for them; and (4) that the premises were occupied by other tenants during the life of the lease, and that they paid rent therefor to the plaintiff.

On September 24, 1925, plaintiff filed a similiter to

the defendant's first plea, and replied to the special plea, denying all the affirmative allegations.

On September 30, 1925, pursuant to leave of court, the defendant filed a plea of the statute of limitations, alleging that the several supposed causes of action set forth in the declaration did not accrue to the plaintiff within ten years next before the commencement of the suit. To that plea, the plaintiff, on October 5, 1925, filed a replication.

On October 9, 1925, the cause came on for trial before the court, without a jury, and there was introduced the testimony of John C. Trainor, and the lease in question. No other evidence was put in.

On November 28, 1925, on motion of the defendant's attorney, an order was entered that the judgment theretofore entered be vacated and set aside. That order further recites that "thereupon this cause is submitted to the court for trial, without a jury, and the court having heard all the evidence produced, and being further advised in the premises, finds the issues for the defendant * * *, and that the plaintiff take nothing by his aforesaid action," and that the defendant recover from the plaintiff his costs and charges.

From the order of November 28, 1925, the plaintiff appealed.

The only question argued in the briefs of counsel.is whether or not the plea of the statute of limitations was good, and the answer to that depends upon the time when the statute of limitations began to run.

The lease introduced in evidence is dated October 29, 1906, and is between John C. Trainor, the lessor, and Charle. L. Koskey, the lessee. The property leased is a store in the premises known as street No. 2442 One Hundred Fifteenth Street, Chicago. The term of the lease is from November 15, 1906, until April 30, 1912. Provision as to payment of rent by the lessee is as follows: "To pay as rent for said demised

premises the sum of Two Thousand Six Hundred and Twenty ($2,620.00) Dollars, payable in installments of Forty ($40.00) Dollars  *  *  *  each in advance, upon the first day of each and every month of said term, at the premises, said store.'' There is a further provision in the lease as follows: ''Tenth.  The sum of twenty dollars to be paid on the date hereof for the rent of said premises to the first day·of December, A. D. 1906, then the installments of rent to be forty dollars per month payable on the first day of each and every month during the continuance of the term of this Lease which terminates April 30th, A. D. 1912 as above stated.'' The lease also contains a warrant of attorney providing ''that if default be made in the payment of the rent above reserved or any part thereof,  *  *  *  it shall be lawful  *  *  *'' for the lessor, without notice, to declare the term ended, and to have judgment confessed ''from time to time for any rent which may be due'' to the lessor by the terms of the lease.

As said above, the only evidence introduced, outside of the lease above referred to, was the testimony of the plaintiff, John C. Trainor.  He testified that the lease was signed by himself and the defendant, and ran for a little less than six years, from November 15, 1906, until April 30, 1912; that the defendant occupied the premises from November 15, 1906, until and including the month of August, 1907, making about nine months; that the defendant paid $40 a month during the term that he was in possession, which included the rent for August, 1907; that no payments have been made by the defendant since he left the premises in August, 1907; that he, the plaintiff, collected $150 from a tenant who occupied the premises from October 10, 1907, to January 9, 1908, at the rate of $50 per month.

It is the contention of the plaintiff that there was due as principal, at the time of the trial, rent at the

rate of $40 a month for 46 months—less $150 received from the intermediate tenant—being the sum of $2,090, and interest thereon at 5 per cent, from May 1, 1912, to April 27, 1922, in the sum of $1,044.14, making in all, $3,134.14.

It will be seen that the first instalment of rent, for which the defendant was in default, was due and unpaid on September 1, 1907, and the last was due and unpaid on April 1, 1912; and that the suit was begun on April 22, 1922, more than ten years after the last instalment was due and payable. The statute of limitations—section 16, ch. 83 [Cahill's St. ch. 83, ¶17]—provides that "actions on * * * written contracts * * * shall be commenced within ten years next after the cause of action accrued."

It is urged for the lessor: "The lease is an entire contract for certain purposes yet each instalment of rent, as it becomes due, creates a separate cause of action, at the option of the lessor, and each default also creates a new cause of action, but the lessor may forbear to institute suits thereon and wait for the lease to expire before doing so." No case is cited, and we have found none that purports in any way to support the proposition that forbearance by the lessor, after a cause of action has accrued as to an instalment of rent provided for in a written lease, can toll the running of the statute.

In *Clun's Case,* 10 Coke's Reports 127, is the following: "If a rent is reserved on a lease for years at four usual feasts of the year, the lessor shall have an action of debt after the first day, and shall not stay till the whole is due, because it is accounted in law as a reservation of parcel of the issues and profits of the land, which is no debt before the day, as in the said case of a bond or contract." So, here, it is reasonable to hold that as the lessee from month to month had the use and occupation of the premises, the contract to that extent, from month to month, was ex-

ecuted on the part of the lessor, and the lessee was bound to pay for it, and especially must that be true where the lessee, as here, expressly contracted to pay for each month in advance, and expressly contracted that he would be in default if he did not pay an instalment on the first day of each month. It follows, therefore, that there arose a cause of action, a right on the part of the lessor to sue or confess judgment, at the latest, upon the second day of any month when the lessee was in default. It is true that the lessor, before beginning suit, could wait, if he so desired, until after the expiration of the full term of the lease, but he would do so at his peril, and run the risk of facing a plea of the statute of limitations, and so losing his remedy. The statute is one of repose, and requires, what is admittedly exceptional, some diligence on the part of the creditor. But that is not fraught with any unnecessary hardship. The lessor here had taken pains to provide expressly for a right to sue whenever there was a default, and he knew, or is presumed to know, that if he did not sue within ten years after a default, the statutory bar could be interposed and his remedy extinguished.

The principle of the statute is based, in part, at least on the presumption of payment or release, which naturally arises from the lapse of time, and the purpose of the statute is to compel settlement within a reasonable time and while the truth, presumably, may be more easily ascertainable. *Parmelee v. Price,* 105 Ill. App. 271. The action here is upon the written lease, and so is an action upon a contract in writing. *Knight v. St. Louis, I. M. & S. Ry. Co.,* 141 Ill. 110, 115; *Phillips v. Pitcher,* 80 Ill. App. 219.

It is stated in Wood on Limitations, p. 424: ''The statute begins to run from the time when a cause of action arises thereon and the bar is complete at the expiration of the statutory period.'' And further, at page 409, ''Where money is payable by instalments,

the statute begins to run upon each instalment from the time it becomes due." *Askew v. Springer,* 111 Ill. 662; *Shelburne v. Robinson,* 3 Gilman (Ill.) 597; *Thompson v. Reed,* 48 Ill. 118; 25 Cyc. 1065; *Bush v. Stowell,* 71 Pa. St. 208.

In *Castleman v. Du Val,* 89 Md. 657, where a lease on a house provided "for a term of eleven months, beginning on the 20th of Oct. 1897, and ending on the 20th of September 1898, at $641.63, payable $58.23 on the 20th day of each and every month," it was held that each instalment was due on the 20th of the month, and not on the first or the last of the month.

In *Davis v. Munie,* 235 Ill. 620, the court said that the expression, when a cause of action accrues, "means when facts exist which authorize one party to maintain an action against another."

In *Bush v. Stowell, supra,* which was a suit on a note payable in four instalments, the time and amount of each payment being specified, it was held, that the statute began to run as each instalment became due. Citing Co. Litt. 292 b; *Rudder v. Price,* 1 H. Bl. 547, and *Cooke v. Whorwood,* 2 Saund. 337. Of course, if there are two remedies which accrue at different times, as stated in *Parmelee v. Price,* 105 Ill. App. 271, "the statute begins to run from the time when the right to pursue the earlier remedy accrues." *Conklin v. Furman,* 8 Abb. Pr. (N. S.) 161.

In our judgment, the right of the landlord to sue was the same as if there had been a written lease for each instalment. As the evidence showed that the lessee was in default on every instalment from and including September 2, 1907, to and through April 1, 1912, and as this suit was not begun until April 27, 1922, the ten years, within which an action should have been commenced, had expired.

For the reasons set forth, the judgment will be affirmed.

*Affirmed.*

O'CONNOR and THOMSON, JJ., concur.